STATE of Wisconsin, Plaintiff-Respondent,

v.

Norbert J. MADAY, Defendant-Appellant.†

Court of Appeals

*No. 92–2989–CR. Submitted on briefs July 28, 1993.—Decided September 15, 1993.*

(Also reported in 507 N.W.2d 365.)

†Petition to review dismissed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Edmund C. Carns* of *Hughes Mathewson Carns & Slattery* of Oshkosh.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general and *Gregory M. Posner-Weber*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. In this appeal we consider whether a defendant in a sexual assault prosecution is entitled to a pretrial psychological examination of the victim when the state gives notice that it intends to introduce evidence generated by a psychological examination of the victim by the state's experts. Because fundamental fairness dictates that a defendant be able to obtain access to all relevant evidence necessary to be heard in his or her own defense, we conclude that a trial court has the discretion to grant a motion for a psychological examination of a victim. Before the trial court may grant such a request, the defendant must have presented evidence of a compelling need or reason for the psychological examination and the trial court

must balance the rights of the defendant against the interests of the victim. Therefore, we reverse the order of the trial court denying Norbert J. Maday's motion for reciprocal psychological examinations of the two victims in this case and remand to the trial court to conduct further proceedings consistent with this decision.

Maday is charged in an information with two counts of sexual contact with Stephen W., who was fourteen years old at the time, and one count of sexual contact with Randall S., who was twelve years old. All acts allegedly occurred in 1986. Stephen W. and Randall S. first reported these incidents to the City of Oshkosh Police Department in May of 1992.

After Maday's arraignment, the state filed notice of its intent to use expert testimony under *State v. Jensen,* 147 Wis. 2d 240, 432 N.W.2d 913 (1988). The state proposed to present to the jury the opinions of five expert witnesses that the behaviors of Stephen W. and Randall S. were consistent with the behaviors of sexual abuse victims that the experts had dealt with in the past. The state's expert witnesses were retained in anticipation of trial; none of the experts was the victims' treating therapist.

In response, Maday filed a motion requesting that the trial court require Stephen W. and Randall S. to submit to psychological examinations by qualified psychologists designated by Maday. The trial court denied the motion. After receiving the written reports of the state's experts, Maday renewed his motion to have the victims examined by his experts. He also filed a motion *in limine* to prohibit the introduction of testimony by the state's experts that the victims' behaviors were consistent with the behavior of a sexually abused person. In the alternative, Maday requested that the trial court

declare the "*Jensen* rule" unconstitutional as applied to the facts of the case.

The trial court denied these motions. The court reasoned that Maday's experts could adequately rebut the testimony from the state's experts without one-on-one psychological examinations. The trial court declared that Maday's experts could offer testimony on the behavior of sexual assault victims based on their experience. The court refused to prohibit the state from introducing testimony fitting within *Jensen* and found that the application of *Jensen* was not unconstitutional.[1]

Maday filed a petition for leave to appeal a nonfinal order. On December 3, 1992, this court granted the petition. Our order stayed the jury trial scheduled for December 7, 1992 and established an accelerated briefing schedule.[2]

Maday argues that the denial of his request for reciprocal psychological examinations denies him his constitutionally guaranteed rights of due process and equal protection of the law. He contends that this will

---

[1] In response to the supreme court's concern that an expert could overstep the bounds of proper expert testimony, *State v. Jensen,* 147 Wis. 2d 240, 256–57, 432 N.W.2d 913, 920 (1988), the trial court limited the scope of the experts' testimony: "[T]he State and its expert witnesses are hereby prohibited from offering testimony or opinions on the credibility of the complaining witnesses or opinions on the ultimate issue as to whether the complaining witnesses have been sexually abused."

[2] We certified this appeal to the Wisconsin Supreme Court because we believed that the issue presented was one of first impression in the state requiring a balancing of the victim's interests against the defendant's right to a fair trial. After the supreme court denied the certification, the parties were given the opportunity to file supplementary briefs on issues raised in the certification that they had not briefed.

cause a fundamentally unfair trial. Maday reasons that the state's announced intention to present the testimony of experts places the victims' mental condition and behavior in issue. He argues that he is at a disadvantage because he cannot present substantive evidence, from his experts' one-on-one interviews with the victims, that rebuts the state's evidence of the victims' mental condition and behavior. [3]

The state counters that the issue is whether the trial court properly exercised its discretion in denying Maday's motions. The state points out that because of the indignity of such an examination and the potential chilling effect on victims, the discretion of the trial court is carefully circumscribed. The state argues that the trial court did not misuse its discretion because of the limited permissible scope of *Jensen* evidence and the availability to Maday of responsive mechanisms to rebut the conclusions of the state's experts. The state asserts that Maday did not present strong and compelling reasons for subjecting the victims to reciprocal psychological examinations. Addressing Maday's arguments on the merits, the state begins with the proposition that due process and equal protection of the laws are not determined from Maday's subjective notions of what constitutes fundamental fairness.

---

[3] Maday does not seek psychological examinations of the victims in order to challenge their competency to testify or their credibility. Therefore, the requirement that he present strong and compelling reasons in support of a motion for an examination to assess competency, *State v. Miller,* 35 Wis. 2d 454, 471–72, 151 N.W.2d 157, 165 (1967); or for an examination to assess credibility, *State v. Lederer,* 99 Wis. 2d 430, 439–40, 299 N.W.2d 457, 463 (Ct. App. 1980), does not apply.

Whether Maday is entitled to psychological examination of the victims presents us with varying standards of review. Normally, discovery matters are procedure-oriented determinations, central to keeping the trial process moving, and we pay a great deal of deference to the trial court in its role as overseer of the trial. *See* Hofer, *Standards of Review—Looking Beyond the Labels*, 74 MARQ. L. REV. 231, 248–49 (1991). However, in this appeal we are also concerned with constitutional principles and protections. We cannot reject the trial court's findings of historical or evidentiary fact unless they are contrary to the great weight and clear preponderance of the evidence. *See State v. Pheil,* 152 Wis. 2d 523, 529, 449 N.W.2d 858, 860 (Ct. App. 1989). Questions of law we review *de novo. See id.* Likewise, in order to insure consistency in the scope of constitutional protections, we independently review the trial court's findings of constitutional fact and independently apply the constitutional principles involved to the facts as found by the trial court. *See id.*

Wisconsin has moved away from the notion that a criminal trial is a sporting event. *See Irby v. State,* 60 Wis. 2d 311, 320, 210 N.W.2d 755, 760–61 (1973). Rather than continue the search for truth in trial by ambush, Wisconsin permits pretrial discovery as a device to speed up trials; to encourage defendants to enter pleas after learning the strength of the state's case; and, most importantly, to make trials fair by providing a level playing field. *See id.* There is a general realization that "[t]he truth is most likely to emerge when each side seeks to take the other by reason rather than by surprise." 2 W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 19.3, at 475–76 (1984) (footnote omitted).

In *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), the United States Supreme Court recognized a defendant's due process rights to "a fair opportunity to defend against the State's accusations." *Chambers* noted that among the minimum essentials of a fair trial is a defendant's right to be heard in his or her own defense and to offer testimony. *Id.* The fundamental right of the defendant to present witnesses and evidence is not absolute; the defendant must comply with a state's established rules of procedure in order to accommodate the legitimate interests of the state in the trial process—fairness and the reliable ascertainment of the truth. *Id.* at 295, 302.

Wisconsin has traveled down the same road. "The right . . . to present testimony in defense of a criminal charge [is a] fundamental . . . right[ ] of a criminal defendant." *Milenkovic v. State,* 86 Wis. 2d 272, 286, 272 N.W.2d 320, 327 (Ct. App. 1978). This is not an unfettered right to be heard in one's own defense; it is subject to the requirement that the testimony presented be relevant. *See Rogers v. State,* 93 Wis. 2d 682, 692–93, 287 N.W.2d 774, 778 (1980).

Pretrial discovery is nothing more than the right of the defendant to obtain access to evidence necessary to prepare his or her case for trial. *See Britton v. State,* 44 Wis. 2d 109, 117, 170 N.W.2d 785, 789 (1969). Because pretrial discovery concerns the ultimate ability of a defendant to present relevant evidence and witnesses in defense of criminal charges, pretrial discovery is a fundamental due process right. *Cf. Milenkovic,* 86 Wis. 2d at 286, 272 N.W.2d at 327; *Rogers,* 93 Wis. 2d at 692–93, 287 N.W.2d at 778. Providing a defendant with meaningful pretrial discovery underwrites the interest

of the state in guaranteeing that the quest for the truth will happen during a fair trial.

An enduring requirement of the criminal justice system is that there must be a comprehensive presentation of facts. As the United States Supreme Court has stated:

> We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*United States v. Nobles*, 422 U.S. 225, 230–31 (1975) (quoting *United States v. Nixon,* 418 U.S. 683, 709 (1974)).

The state submits that Maday's right to present relevant testimony on his own behalf must be balanced against the rights of the victims to be free from intrusive psychological interviews. The state argues that a fair trial is guaranteed by the responsive mechanisms available to Maday—cross-examination, use of nonexamining experts and argument. The state asserts that these responsive mechanisms are more than sufficient to guarantee Maday a fair opportunity to defend himself.

On the other hand, Maday contends that the jury will give greater credence to the testimony of the state's experts because they personally interviewed the victims. He suggests that the jury will disbelieve his experts because they did not develop their clinical

impressions from a one-on-one interview of the victims. Maday complains that the court will be limiting his experts to the presentation of comments on the testimony of the state's experts. His position is that he is denied meaningful cross-examination because he will not have access to the same information used by the state's experts. Without personal clinical interviews, Maday argues, the state has a strategic advantage that he cannot overcome.

We are not convinced that the responsive mechanisms available to Maday are a satisfactory substitute for pretrial, clinical interviews of the victims. Generally, "[m]ost psychiatrists would say that a satisfactory opinion can only be formed after the witness has been subjected to a clinical examination." 1 MCCORMICK ON EVIDENCE § 44, at 167 (J. Strong 4th ed. 1992)(footnote omitted). Recently, the Illinois Supreme Court, in a case involving a defendant's request that the victim be examined by the defendant's own expert, noted that "[a]n expert who has personally examined a victim is in a better position to render an opinion than is an expert who has not done so." *People v. Wheeler*, 602 N.E.2d 826, 832 (Ill. 1992).[4] Finally, our supreme court has

---

[4] Based upon the examination of the prosecution's expert on rape trauma syndrome, the Illinois Supreme Court offers several reasons why a personal interview is essential. The state's expert testified that she based her opinion on her own subjective interpretation of the victim's answers to questions. The expert also relied upon certain nonverbal factors observed during the interview, such as the victim's inability to make eye contact and the victim's body posture. The expert also testified that her reports did not include all of her observations of the victim. *People v. Wheeler*, 602 N.E.2d 826, 832 (Ill. 1992). Unquestionably, there is little probative value of the opinion of an expert who must rely upon incomplete reports of others and is deprived of

noted that pretrial review of written material and observation of the victim during trial are inadequate foundations for a psychologist's opinion; a definitive opinion requires an extensive interview plus review of material on the victim's life and behaviors. *See Schleiss v. State,* 71 Wis. 2d 733, 746, 239 N.W.2d 68, 76 (1976).

We conclude that the importance of the foundation for the opinion of a psychologist makes it fundamentally unfair to restrict a defendant to responsive mechanisms as suggested by the state. *See Wheeler,* 602 N.E.2d at 833. A defendant who is prevented from presenting testimony from an examining expert when the state is able to present such testimony is deprived of a level playing field. "[A] State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained." *Ake v. Oklahoma,* 470 U.S. 68, 79 (1985).

The state has put the behavior of the two victims into issue when it proposed to present, in its case-in-chief, testimony from five experts that the victims' behaviors were consistent with the behaviors of other victims of sexual abuse. Fundamental fairness requires that Maday be given the opportunity to present relevant evidence to counter this evidence from the state. In order to obtain that evidence, Maday must be given the opportunity to discover the psychological condition of the victims. In this case, the criminal defendant's interest in the right to require the victims to submit to psychological examinations is no less compelling than that underlying the right given to civil

firsthand knowledge of the tenor and mood of a personal interview.

litigants under sec. 804.10, Stats., which allows a court to order a party to submit to a physical or psychological examination when that party's physical or psychological condition is at issue. *See Ranft v. Lyons,* 163 Wis. 2d 282, 293, 471 N.W.2d 254, 258 (Ct. App. 1991).

We are not unmindful of the need to protect the privacy of the victim and the additional trauma that the victim of an alleged sexual assault could suffer as the result of a probing clinical interview. We must balance the constitutional right of the defendant to a full and fair explication of the evidence against the consequential invasion of the victim's privacy and the potential harm to a victim.

Those courts which have considered whether a trial court has the discretion to order a victim to submit to a pretrial psychological interview have developed a variety of guidelines for trial courts to follow. In *Wheeler*, the Illinois Supreme Court held that unless the defendant is granted a pretrial, personal clinical interview of the victim of an alleged sexual assault, the state is precluded from introducing testimony from its experts. *Wheeler*, 602 N.E.2d at 833. The Illinois Supreme Court did not establish any guidelines because, by statute, expert testimony relating to the existence of post-traumatic stress syndrome is admissible in Illinois courts.[5] *Id.* at 830. In other words, evidence of rape trauma syndrome is substantive evidence that a sexual assault occurred. *Id.* at 831. The Illinois Supreme Court reasoned that a defendant

---

[5] ILLINOIS REV. STAT. ch. 38, para. 115–7.2 (1989), provides in part:

> In a prosecution for an illegal sexual act ... testimony by an expert, qualified by the court relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence.

must be permitted to challenge the state's evidence with evidence of equal quality. *Id.* at 831–32. The Illinois approach is not an adequate balancing test because in Wisconsin such "syndrome" evidence is not substantive evidence that a sexual assault occurred.

The Alaska Court of Appeals has adopted a requirement that a defendant, seeking the adverse psychological examination of a victim, make a strong showing of materiality. *Moor v. State*, 709 P.2d 498, 508 (Alaska Ct. App. 1985). In Alaska, a trial court is required to balance the defendant's right to a fair trial against the victim's right to privacy and the risk that sexual assaults may go unreported. *Id.* The Alaska method lacks any specific guidelines to make it useful to trial courts in Wisconsin.

We conclude that the guidelines developed by the West Virginia Supreme Court of Appeals present a workable method of balancing the defendant's constitutional right to present relevant evidence and the privacy needs of the victim. In *State v. Delaney*, 417 S.E.2d 903 (W. Va. Ct. App. 1992), the West Virginia court was confronted with the issue of whether a trial court erred in prohibiting psychological reexaminations of three victims of alleged sexual assaults and limiting the defense to a presentation of interpretations of psychological examinations conducted by the state's experts. *Id.* at 906. After surveying decisions in other jurisdictions, the West Virginia court defined a balancing test that we believe gives appropriate attention to the competing interests that a trial court must consider. *Id.* at 907.

When the state manifests an intent during its case-in-chief to present testimony of one or more experts, who have personally examined a victim of an

359

alleged sexual assault, and will testify that the victim's behavior is consistent with the behaviors of other victims of sexual assault, a defendant may request a psychological examination of the victim. A defendant making such a request must present the court with evidence that he or she has a compelling need or reason for the psychological examinations. In considering the defendant's request, the trial court should consider:

(1) the nature of the examination requested and the intrusiveness inherent in that examination;

(2) the victim's age;

(3) the resulting physical and/or emotional effects of the examination on the victim;

(4) the probative value of the examination to the issue before the court;

(5) the remoteness in time of the examination to the alleged criminal act; and

(6) the evidence already available for the defendant's use.

*Id.* at 907.

To these six considerations we add a seventh. The trial court should consider, based on the testimony of the defendant's named experts, whether or not a personal interview with the victim is essential before the expert can form an opinion, to a reasonable degree of psychological or psychiatric certainty, that the victim's behaviors are consistent with the behaviors of other victims of sexual abuse.

If the trial court determines under this test that the defendant is entitled to a pretrial psychological examination of the victim, it should issue an order that the victim shall submit to a clinical interview to be conducted by the defendant's psychologist or psychiatrist. The trial court does have the discretion to place

360

conditions on the order to protect the victim and to prevent the examination from being used to harass the victim. For example, the trial court may determine whether the examination can be electronically recorded; the type of interview protocol the examiner may employ; the length and place of the interview; the number of interviews; the number of experts that may conduct interviews; and, whether the victim may be accompanied at the interview.[6]

Under the rules of discovery, any report generated by the defense expert's examination of the victim is discoverable by the prosecution.

We point out that nothing in our opinion requires a victim to consent to an examination by the defendant's psychologist or psychiatrist. In order to protect the privacy of the victims in cases of alleged sexual assault, the ultimate decision of whether to undergo an examination is to be left in the hands of the victim. The victim is free to refuse for whatever reason. However, a victim's refusal to submit to a pretrial psychological examination must be balanced against the defendant's constitutional rights to a fair trial. Thus, where a victim refuses to submit to an examination and where the defendant has shown a compelling need for the psychological examinations, the state may not introduce

---

[6] Of course, the person accompanying the victim is there to provide emotional support and cannot attempt to interfere in the interview. It would be inappropriate if the person accompanying the victim had a relationship with the prosecution of the defendant, including an attorney, social worker, victim's right representative, investigator, retained expert witness, *etc.* The person accompanying the victim should be a parent, spouse, sibling or some other lay person who is a part of the victim's support network.

evidence of the behavior of the victim through its examining expert. Nevertheless, the state will not be prohibited from using a nonexamining expert to introduce evidence that the behavior of the victim is consistent with the behaviors of victims of the same type of crime. *See Jensen*, 147 Wis. 2d at 257, 432 N.W.2d at 920.

In this appeal, the record is not sufficient for us to apply the balancing test we have adopted to Maday's request for psychological examinations of the two victims. Therefore, we remand this case to the trial court to reconsider Maday's request under the directions given in this decision.

*By the Court.*—Order reversed and cause remanded with directions.