COURT OF APPEALS
DECISION
DATED AND FILED

August 14, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1547-CR**

Cir. Ct. No. **2016CF14**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT II**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

ANTONIO L. WHATLEY,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Antonio L. Whatley appeals a judgment convicting him of first-degree sexual assault of a child under the age of thirteen and an order denying his motions seeking to withdraw his no contest plea alleging ineffective assistance of counsel and to strike a portion of the postconviction hearing transcript.  For the following reasons, we affirm.

¶2    Whatley was charged with first-degree sexual assault of a child and false imprisonment, both as a repeater.  While in jail, Whatley confessed orally and in a letter to another inmate, William Vessell.  He also said in the letter that he had sexually assaulted another juvenile.  Whatley asked Vessell if he knew of someone who would falsely testify to an alibi defense.

¶3    Hoping to get consideration for himself, Vessell told police about Whatley's confession and request for an alibi witness.  Vessell put Whatley in touch with a "friend," who in reality was an undercover police officer.  Whatley, who by then had public defender representation, spoke on the telephone to the woman he believed was Vessell's friend.  After admitting the offense to her, Whatley explained what he wanted her to use as his alibi.  Whatley then said he preferred to continue the conversation in person.  Unbeknownst to Whatley, the telephone conversation had been recorded.

¶4    The undercover officer visited Whatley at the jail.  Once again, he confessed to the crime, this time providing more details, and asked her for help with his alibi.  This conversation, too, was recorded.  Detectives later contacted Whatley in jail to investigate, at least in part, the potential perjury case.

¶5    Whatley ultimately pled no contest to first-degree sexual assault of a child.  According to defense counsel, the State agreed, among other concessions,

not to charge him with the unrelated sexual assault or suborning perjury.[1] He was sentenced to fifteen years' initial confinement and ten years' extended supervision.

¶6 Postconviction, Whatley sought to withdraw his no contest plea. He claimed defense counsel was ineffective for not filing a motion to suppress the statements he made to the undercover officer. He asserted that using Vessell as an informant and the undercover police officer to contact him and obtain tapes incriminating him while he was in jail and represented by counsel was illegal.

¶7 The State claimed it was unaware of the telephone call the undercover officer made to Whatley while he was represented during which he confessed. It acknowledged, however, that Vessell had gone to police with the letter from Whatley admitting to the crime and that Vessell told police Whatley had asked for help in finding a witness who would falsify an alibi. Whatley was granted a *Machner*[2] hearing on his motion after which the circuit court ordered the parties to brief the issue.

¶8 Whatley argued in his brief that defense counsel was ineffective for not moving to suppress the inculpatory statements he unwittingly made to police while he was represented. He also claimed that the court should strike the portion of the postconviction hearing transcript containing defense counsel's testimony on cross-examination, asserting that her answers violated his attorney-client privilege.

---

[1] The State agreed to dismiss the repeater enhancer, to cap its sentencing recommendation at ten years' initial confinement, to move to dismiss and read in the false-imprisonment charge, and to read in an uncharged matter—the perjury, according to the State's posthearing brief in response to Whatley's brief.

[2] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

¶9 The State agreed that police are prohibited from contacting a represented defendant with regard to the offense for which he or she is represented. It contended, however, that when the detectives contacted Whatley in the jail, they were investigating a new crime, suborning perjury, such that the evidence need not be suppressed. The State also objected to Whatley's motion to strike part of the postconviction transcript.

¶10 The court found that, while certain information "may have been contained in some type of discovery," none of it "was presented by way of testimony." It especially noted that the absence of law enforcement testimony limited its ability to discern what law enforcement did and what information they knew or were attempting to pursue. Persuaded that case law supported the State's position that the undercover officer's investigation of Whatley's attempt to suborn perjury did not violate his right to counsel, the court concluded that Whatley failed to show that not filing a suppression motion was deficient performance. Accordingly, the court held that Whatley had not satisfied his burden of proving by clear and convincing evidence that a manifest injustice demanded plea withdrawal. It also denied Whatley's motion to strike portions of the transcript. This appeal followed.

¶11 Whatley again asserts that he should have been allowed to withdraw his plea because postconviction counsel was ineffective for not moving to suppress the inculpatory statements he unwittingly made to police while represented by counsel. A defendant may withdraw a guilty or no contest plea after sentencing "only upon a showing of 'manifest injustice' by clear and convincing evidence." **State v. Bentley**, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1979). "[T]he 'manifest injustice' test is met if a defendant is denied the effective assistance of counsel." **Id.**

¶12    To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Performance is deficient if it falls outside the range of professionally competent representation, but we strongly presume that counsel acted reasonably within professional norms. *Pitsch*, 124 Wis. 2d at 636-37. To demonstrate prejudice, a defendant seeking plea withdrawal must show "that there is a reasonable probability that, but for [] counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Bentley*, 201 Wis. 2d at 312 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

¶13    Whether a postconviction motion alleges sufficient material facts that, if true, would entitle the defendant to relief is a question of law this court reviews de novo. *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If the motion does not contain sufficient facts, it is within the court's discretion to hold a hearing. *Id.* To be sufficient, a postconviction motion must set forth the who, what, where, when, why, and how, and the facts alleged must be material. *Id.*, ¶¶23-24.

¶14    Whatley's motion did not set forth the "who" and the "what." He did not name the undercover officer or provide particulars of the statements he made to police. He did not submit the recordings or transcripts of his recorded confessions that were in his possession. He also did not disclose whether counsel was aware of the statements or the recordings. He did not show he was entitled to a hearing, yet the court in its discretion granted him one.

¶15    Despite being given the additional chance to bolster his lacking postconviction claims, Whatley did not remedy them at the hearing. He did not submit any recordings, testify himself, or have Vessell, the undercover officer, or the detectives testify. Defense counsel testified, but Whatley asked her no questions that could have proved that she knew or should have known about his alleged statements. He asked her only if she had represented him at trial, reviewed his postconviction motion, and opted to not file a motion to suppress because she believed case law would not have supported it. The State asked defense counsel if she was aware that Whatley had made incriminating comments to another inmate and if she knew that police were investigating whether Whatley was attempting to suborn perjury. Neither Whatley nor the State asked her about the gist of Whatley's ineffectiveness claim: whether she was aware that Whatley made statements to police while represented by counsel.

¶16    The record thus is devoid of the substance or timing of statements Whatley made to police. At the time the undercover officer and the detectives contacted Whatley in jail, he was in the process of committing a new crime— suborning perjury. As Whatley has not provided any facts to support his claims, he has not shown how counsel's performance was deficient in not pursuing his allegations via a motion to suppress. The record shows only that she believed such a motion lacked legal support. "[A]n attorney does not perform deficiently when he [or she] chooses not to pursue tactics that lack factual or legal support," *State v. Pico*, 2018 WI 66, ¶28, 382 Wis. 2d 273, 914 N.W.2d 95, and "[a] showing of prejudice requires more than speculation," *State v. Wirts*, 176 Wis. 2d 174, 187, 500 N.W.2d 317 (Ct. App. 1993).

¶17    Whatley next contends that the postconviction court erroneously ruled that defense counsel did not breach the attorney-client privilege and thus

erred in denying his motion to strike the portion of the transcript containing her cross-examination. We disagree.

¶18 First of all, the court made no such ruling. Early in the State's cross-examination, the prosecutor asked defense counsel whether Whatley admitted writing the letter. Whatley objected that "there's attorney-client privilege there." The State responded that Whatley's motion alleging ineffective assistance waived his ability to assert the privilege. Whatley then withdrew his objection, so the court did not rule on it. By withdrawing his objection, Whatley has waived appellate review of this claim of error. *State v. Hoffman*, 106 Wis. 2d 185, 214-15, 316 N.W.2d 143 (Ct. App. 1982).

¶19 We could stop there. But beyond that, there is no lawyer-client privilege "[a]s to a communication relevant to an issue of breach of duty by the lawyer to the lawyer's client or by the client to the client's lawyer." WIS. STAT. § 905.03(4)(c) (2017-18).[3] A waiver of the attorney-client privilege is inherent in a defendant's claim of ineffective assistance of counsel "to the extent that counsel must answer questions relevant to the charge of ineffective assistance." *State v. Flores*, 170 Wis. 2d 272, 277-78, 488 N.W.2d 116 (Ct. App. 1992).

¶20 Counsel testified on cross-examination that she found out Whatley had made statements to another inmate admitting to the sexual assault, that Whatley wrote a letter to the inmate admitting not only what he had done but that he had sexually assaulted another juvenile, that Whatley admitted attempting to

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

create a false alibi, and that the plea negotiations included not charging him with suborning perjury.

¶21 The court found that the responses Whatley challenged in his motion were relevant to the issue of ineffective assistance. Whatley contends they were not. The sole issue, he argues, was whether counsel had a strategic reason for not filing a motion to suppress, which had nothing to do with whether he confessed any wrongdoing to her or could be charged with perjury.

¶22 The questions and responses were relevant. The State's questions were designed to show that significant evidence against Whatley—his verbal and written confessions to Vessell and his request that Vessell help him find someone to create a false alibi, not to mention the victim's statement—predated his allegations of government misconduct. The confessions to Vessel and the alibi request were the reason Vessell went to police in the first place.

¶23 The exchange, coupled with the State's concessions, also served to undercut the credibility of Whatley's claim that he would have gone to trial had counsel moved to suppress any statements to the undercover officer. The success of a suppression motion is speculative at best. Speculation does not establish prejudice. *See Wirts*, 176 Wis. 2d at 187. Moreover, even if a motion had been filed and the recorded statements were suppressed, the victim and Vessell would have testified at trial and the letter Whatley gave to Vessell confessing to that sexual assault and the unrelated one would have been admitted. Considering the weight of the remaining evidence against him, the lengthy prison time he faced on the two counts, and the concessions the State offered, Whatley's claim that he would have gone to trial falls short.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.